**RENT AMERICA, INC. and Barney Gordon Sinclair, Appellants,**

v.

**AMARILLO NATIONAL BANK, Appellee.**

**No. 07–88–0251–CV.**

Court of Appeals of Texas, Amarillo.

Feb. 23, 1990.

Rehearing Denied March 20, 1990.

Philip R. Russ, Amarillo, for appellants.

Whittenburg, Whittenburg & Schachter, Steven L. Hoard, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

By a bench-trial judgment, the trial court decreed that Amarillo National Bank recover the principal and interest due on three promissory notes from Rent America, Inc., the maker, and Barney Gordon Sinclair, the guarantor. Rent America and Sinclair seek a reversal of the judgment, and a rendition of judgment or a remand of the cause, on ten points of error. On the rationale expressed, the points will be overruled and the judgment will be affirmed.

Rent America executed three promissory notes, each dated 15 May 1987 and made payable to the order of Amarillo National Bank on demand or, if no demand was made, on or before 20 November 1987. The payment of the notes was secured by a security agreement and a guaranty executed by Sinclair.

Two of the notes were in the respective principal amounts of $176,666.70 and $100,-000, bearing annual interest from date at the rate of "RepublicBank, Dallas prime as it varies + 2% based on 360 days." The other note was a re-advancing note in the maximum principal amount of $100,000, bearing interest on the amount advanced and outstanding "at a rate equal to two percent (2.00%) per annum in excess of that rate of interest published by REPUBLIC-BANK, DALLAS, TEXAS, N.A. ... as being its prime rate of interest ... but not at any time to exceed the highest rate of interest lawfully chargeable to borrower under the Indicated Rate ceiling of ART. 5069-1.04 V.A.T.S. ... and shall be based on a 360-day year."

According to the appellate record, when the notes were not paid, the bank sent Rent America a letter dated 8 December 1987 demanding payment of the balance due on the notes by 14 December 1987. Rent America did not pay the indebtedness and on 15 December 1987, the bank sent a letter to Sinclair, demanding payment by 24 December 1987. On the same day, the bank offset the checking account of Rent America in the sum of $21,672.47, which was applied to reduce the outstanding balance on the notes. Sinclair did not tender payment of the indebtedness.

Thereafter, on 28 December 1987, the bank instituted the action underlying this appeal. By its pleading, the bank sought recovery on each note of the unpaid principal amount and "accrued and unpaid interest 12/16/87" in the total amount of $373,-601.48, and ancillary relief. The total amount sought was without credit for the $21,672.47 previously offset and credited on the total indebtedness of the notes.

Rent America and Sinclair answered with a general denial and interposed affirmative defenses, one of which was usury. At the same time, they filed a counterclaim, seeking actual and punitive damages from the bank on various theories, one of which was usury.

With the pleading in this posture, the cause was heard by the trial court. During the hearing, the court, over the objection of Rent America and Sinclair, permitted the bank to file a trial amendment to allege that any usury arising out of its pleading was the result of an accidental or bona fide error, and that, to the extent that usury may have been charged, any penalty shall be governed by 12 U.S.C. § 86.

After a consideration of the pleading and the evidence, the court rendered, and on 28 June 1988 signed, a modified judgment decreeing that the bank recover from Rent America and Sinclair, jointly and severally, the computed amount of unpaid principal and accrued interest through the date of judgment, the amount of contractual attorney's fees, and interest on the total amount at the rate of ten (10%) percent per annum until paid. The court also decreed that Rent America and Sinclair take nothing by their counterclaim. Later, the court made

and filed findings of fact and conclusions of law in support of its judgment.

Rent America and Sinclair attack the judgment with ten points of error. In doing so, they frequently refer to the exhibits introduced during trial, none of which have been included in the record on appeal. *See* Tex.R.App.P. 50. Consequently, the points of error will be considered in the light of the appellate record filed and in the order of systematic progression.

On 20 April 1988, the court set the cause for a nonjury trial on 31 May 1988. Five days before trial date, Rent America and Sinclair filed a demand for jury trial, and on the following day, they filed a motion for continuance of "the hearing on [the bank's] Motion for Summary Judgment." The grounds stated for the continuance were that neither counsel moved the court to set the case and, other than their unanswered requests for admissions and documents, no discovery had been undertaken.

The demand for jury trial was not filed, as the controlling rule prescribes, "not less than thirty days in advance" of the date set for trial of the cause on the nonjury docket. Tex.R.Civ.P. 216(1). The motion for continuance neither was supported by affidavit nor was based either on the consent of the parties or the operation of law within the meaning of the governing rule. Tex.R. Civ.P. 251. On the day of trial, the court denied the demand for jury trial and the motion for continuance.

■ With their tenth point of error, Rent America and Sinclair fault the court for its failure to exercise its discretion to allow a continuance and for denying them a jury trial on the theories that the court's denials violated the Texas Constitution's open courts and right of trial by jury provisions. *See* Tex. Const. art. I, §§ 13, 15. The point is not well-premised.

■ The constitution's open courts provision was not offended by the court's denial of a continuance. The court did not deny Rent America and Sinclair access to the court for a determination of the controversy; the court merely denied their belated motion for a continuance, thereby giving them immediate access to the court for a resolution of the controversy. The denial of the motion was a matter within the sound discretion of the court and, upon the failure of Rent America and Sinclair to comply with the requirements of rule 251, it is to be presumed that the court did not abuse its discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986). The presumption has not been rebutted.

■ Nor was the constitution's right of trial by jury provision offended by the court's denial of the demand for jury trial. The constitutional right of trial by jury is not absolute in civil causes; it is regulated by those laws and rules which specify its availability. *Green v. W.E. Grace Manufacturing Company*, 422 S.W.2d 723, 725 (Tex.1968). When Rent America and Sinclair failed to comply with rule 216 to timely avail themselves of a jury trial, the court did not abuse its discretion in denying their demand for a jury trial. *Matter of Estate of Diggs*, 733 S.W.2d 681, 685 (Tex.App.— Amarillo 1987, writ denied). The tenth point is overruled.

After the bank adduced evidence regarding the notes, Rent America and Sinclair tendered a set of numerous requests for admissions, by which they sought admissions mainly about the bank's prime rate of interest, and requested that the matters be deemed admitted because the bank responded to the request more than thirty days after it was served. By a colloquy between counsel and the court, and enlarged by statements in the briefs, together with the introduction of letters, it was developed that Rent America and Sinclair filed a suggestion of bankruptcy without stating whether Rent America or Sinclair or both were involved in bankruptcy proceedings, which the parties accepted, to some degree and for some length of time, to stay the judicial proceedings. It was later revealed that Rent America was the party in the bankruptcy proceedings. There is a record indication that when the stay of bankruptcy was lifted, the bank filed a response and objected to the request for admissions. However, as previously noted, none of the referenced documents

pertaining to bankruptcy or the request for admissions, except for the request itself that was made a part of the record, has been included in the appellate record so that a time frame can be authenticated.

■ Nevertheless, when it was developed to the court's unchallenged satisfaction that neither the request for admissions nor the bank's response had been filed with the district clerk, the court refused to deem the matters admitted because of the failure to comply with the mandatory filing requirements of Rule 169, Texas Rules of Civil Procedure. The pertinent portion of the rule mandates that:

A true copy of a request for admission or of a written answer or objection, together with proof of the service thereof as provided in Rule 21a [*viz.*, a written statement by an attorney of record, or the return of the officer, or the affidavit of any other person showing service], shall be filed promptly in the clerk's office by the party making it.

Tex.R.Civ.P. 169(1).

The court's refusal is the ninth-point contention of error by Rent America and Sinclair. They submit, on the authority of *Curry v. Clayton*, 715 S.W.2d 77 (Tex.App. —Dallas 1986, no writ), that when the bank did not respond to their request within thirty days after its receipt, the matters were deemed admitted by operation of law, and the court lacked discretion to refuse the deemed admissions. *Id.*, at 79. Yet, Rent America and Sinclair have failed to evidence that *Curry* is controlling under this appellate record.

Before unanswered requests for admissions are automatically deemed admitted, the requirements for deemed admissions must first be met. Tex.R.Civ.P. 169(1); *Allison v. Means*, 352 S.W.2d 789, 790–91 (Tex.Civ.App.—Fort Worth 1961, writ ref'd n.r.e.). *See also Hyde v. Apple*, 209 S.W.2d 804, 805–07 (Tex.Civ.App.—Eastland 1948, no writ). It is undisputed that Rent America and Sinclair did not comply with the mandatory requirements of rule 169(1) to evidence the request, service, and lack of timely answer.

■ Moreover, there is at least one other correct legal reason why the court's refusal to deem the matters admitted is sustainable. *See Guar. County Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex.1986). Rent America and Sinclair did not object to the testimony at variance with the matters they sought to establish by admissions on the ground that they were relying upon the bank's deemed admissions. Thus, they waived any right to rely upon the deemed admissions tardily requested. *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex.1989). As a result, the court cannot be faulted under this record for its ruling. The ninth point of error is overruled.

Rent America and Sinclair have grounded their first six points of error on the theory that the bank committed acts violative of the usury statutes, and they have grouped the points as contentions of erroneous actions by the trial court. The points will be addressed generally rather then seriatim.

■ Initially noticed is the contention that the interest charged on the re-advancing note is not a specified rate since the amount depended upon future events. From this, Rent America and Sinclair argue that the agreement to a floating rate over an undefined prime rate of a third party is at best an agreement to agree, which is unenforceable. Therefore, they conclude, the specified rate of six percent (6%) per annum provided by Article 5069–1.03, Texas Revised Civil Statutes Annotated (Vernon 1987), is applicable, thereby making the amount of interest charged by the bank usurious. The argument is not persuasive.

■ The bank and Rent America did not agree to contract at some later time for a rate of interest; rather, they expressly agreed that Rent America was obligated to pay the rate of interest of two (2%) percent over RepublicBank's prime rate as it varies. The rate agreed upon was a specified rate referenced to a determinative source, which could be made certain by proof. *Dale Oil & Refining Co. v. City of Tulia*, 25 S.W.2d 671, 674 (Tex.Civ.App.—Amarillo 1930, no writ). The fact that the interest rate was determined by the prime rate set

by a third party does not render the obligation unenforceable, for that was the agreed standard to be used to ascertain the rate of interest on the note. *Penwell v. Barrett,* 724 S.W.2d 902, 905 (Tex.App.—San Antonio 1987, no writ). Then, it cannot be said that the note is usurious on its face, *Am. Century Mtg. Investors v. Regional Ctr., Ltd.,* 529 S.W.2d 578, 583 (Tex. Civ.App.—Dallas 1975, writ ref'd n.r.e.), particularly since the bank and Rent America specifically excluded the possibility that the interest rate would exceed the highest rate of interest lawfully chargeable. *Id.* at 584 n. 2.

■ With an allied subpoint, Rent America and Sinclair assert that the bank violated the usury statutes by calculating interest on the basis of a 360–day year when the notes provide for a per annum rate and, therefore, the notes are ambiguous on their face. However, they have not developed the subpoint by argument and authorities. They neither offer an explanation why the calculation of annual interest on the basis of a 360–day year makes the notes ambiguous, nor suggest what effect an ambiguity has on their liability. Since the subpoint does not present a meritorious contention and it is not supported by argument and authorities, it is waived. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 934 (Tex.1983).

■ By a companion subpoint, Rent America and Sinclair contend that the bank also violated the usury statutes by charging interest during the bankruptcy in the face of the automatic stay. Without citing supporting authority, they state, "It is axiomatic that the automatic stay prevents the charging of any interest." But they omit to notice that the axiom has no application to admitting interest on amply secured claims, *Oppenheimer v. Oldham,* 178 F.2d 386, 388–89 (5th Cir.1949), and they have not attempted to show by the record that the bank's notes were not amply secured. As a result, they have not discharged their burden to show that the bank violated the

usury statutes in this respect. Tex.R. App.P. 50(d).

The first contention in the six-point grouping is the bank's violation of the usury statutes by its 15 December 1987 letter demand for the balance due on the notes without crediting Rent America for the $21,672.47 offset made the same day. The argument is that the bank's letter demanded payment of a credit already made and unearned interest, which constituted a charging of interest in violation of Article 5069–1.06, Texas Revised Civil Statutes Annotated (Vernon 1987). However, the argument stems from the faulty premise that a charge of interest was made for $21,672.47 of the balance that had been reduced by the offset in that amount. The appellate record is otherwise because it clearly shows that the demand letter was prepared for the correct amount of unpaid principal and accrued interest due on each note and released before Rent America's account was offset and the offset was credited to the balance due on the notes. To maintain the contention, Rent America and Sinclair would have to establish by the record that the bank entered a usurious amount of interest in the demand letter, *Danziger v. San Jacinto Sav. Ass'n,* 732 S.W.2d 300, 304 (Tex.1987), but they have not carried their burden to prove the letter charged usurious interest. *Nationwide Financial Corp. v. English,* 604 S.W.2d 458, 463 (Tex.Civ.App.—Tyler 1980, writ dism'd as moot).

■ The more serious contention is that the bank violated the usury statutes by filing its 28 December 1987 sworn pleading to recover the calculated total of the principal balance and accrued interest due and unpaid on each note without an allowance for the $21,672.47 offset then credited on the notes. Specifically, the bank pleaded that the amounts due and payable on the notes were as follows:

| | |
|---|---|
| Note dated May 15, 1987 | $169,166.70 |
| Accrued and unpaid interest 12/16/87 | $ 5,991.39 |
| TOTAL DUE THIS NOTE | $175,158.09 |

Interest on said note is accruing at the rate of $50.52 per day.

| | |
|---|---|
| Note dated May 15, 1987 | $ 91,663.66 |
| Accrued and unpaid interest 12/16/87 | $ 3,248.46 |
| TOTAL DUE THIS NOTE | $ 94,912.12 |

Interest on said note is accruing at the rate of $27.37 per day.

| | |
|---|---|
| Note dated May 15, 1987 | $100,000.00 |
| Accrued and unpaid interest 12/16/87 | $ 3,531.27 |
| TOTAL DUE THIS NOTE | $103,531.27 |

Interest on said note is accruing at the rate of $29.86 per day.

| | |
|---|---|
| TOTAL NOW DUE PLAINTIFF: | $373,601.48 |

Based on evidence that the amounts pleaded actually were the amounts due on 15 December 1987 before the offset was credited, and were consistent with the bank's demand letters, the trial court found that there was no "charge" of usurious interest in the pleading.

The testimonial record shows that the $21,672.47 offset was applied to the latter pleaded $100,000 note which, absent the exhibits themselves, computes to a principal balance of $78,327.53 at the time the bank's petition was filed. Thus, by alleging a daily accrual of $29.86 interest on the $100,000 balance, the bank charged interest that was unearned and was in excess of that for which the parties contracted. *Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209, 211–12 (Tex.Civ. App.—Austin 1975, writ ref'd n.r.e.). The question, then, is whether the bank charged usurious interest, *i.e.*, interest greater than eighteen (18%) percent per annum, the maximum amount permitted on the obligation of the corporate borrower, Rent America. Tex.Rev.Civ.Stat.Ann. art. 1302–2.09 (Vernon Supp.1990). *Cf. Danziger v. San Jacinto Sav. Ass'n*, 732 S.W.2d at 305 (Gonzalez, J., concurring) (a charge of interest in a pleading constitutes usurious interest only when the underlying agreement sought to be enforced is usurious).

In this regard, Rent America and Sinclair have furnished calculations—computed on the total amount of the three notes and the total amount of interest accruing daily on them as stated in the bank's pleading, together with the uncredited $21,672.47 off-set classified as interest charged—to represent that the failure to give credit for the $21,672.47 offset constituted a charge of interest at the rate of 181.55% or 41.81%, depending upon the period of time for the calculations. Since the bank's pleading did not charge the uncredited $21,672.47 offset as interest, but merely failed to show its credit to the principal balance, the calculations are not convincing.

Inasmuch as the bank's pleading constituted a charge of unearned interest on a portion of the balance paid on only one note, the question of usurious interest is confined to that note, *Steves Sash & Door Co. v. Ceco Corp.*, 751 S.W.2d 473, 475–76 (Tex.1988), and is considered in the light of the amount of interest spread over the time the borrower had the use of the principal debt. *Tanner Development Co. v. Ferguson*, 561 S.W.2d 777, 786 (Tex.1977). By simple arithmetic, a daily rate of $29.86 interest accruing for 365 days amounts to $10,898.90. This amount of annual interest charged only on the true principal balance of $78,327.53 would amount to an annual interest rate of 13.91%, or 14.089% based on a 360–day year. *See Lawler v. Lomas & Nettleton Mortg. Investors*, 691 S.W.2d 593, 596 n. 2 (Tex.1985). The rate is less than the maximum rate legally chargeable to the corporate borrower, Rent America. It follows that the bank's pleading did not charge usurious interest, and the court did not err in so finding.

Not unnoticed is the collateral argument that the bank charged usurious interest by holding a foreclosure sale of Rent America's inventory, did not apply the proceeds to the total balance of the notes as of the date of sale, but continued to accrue interest on the entire balance. The circumstances of the sale are set forth in the following address to the seventh point of error, but it suffices to state here that Rent America and Sinclair have not offered to show, by calculations or by reference to the record, that the alleged delay in applying the proceeds resulted in a usurious charge of interest. Therefore, they have not carried their burden of proving a

charge of usurious interest. *Nationwide Financial Corp. v. English*, 604 S.W.2d at 463.

In view of what has been written, it becomes unnecessary to address Rent America's and Sinclair's remaining contentions advanced in the first six points that the court erred in (3) allowing the bank's trial amendment, (4–5) finding that any excessive charge of interest was due to bona fide error, and (6) finding that 12 U.S.C. § 86 was applicable. Tex.R.App.P. 90(a). The first six points of error are overruled.

 During the trial, the court heard testimony that when the bank took possession of Rent America's inventory securing payment of the notes, the inventory reflected a cost to Rent America, at some uncalculated date, of $30,000 to $40,000. The inventory was sold at auction on 21 May 1988 for $12,247.75 and, after the payment of expenses, netted more than $8,000 for credit on the note balances. The auctioneer described the property as being low quality and personally appraised it at $10,-600. He explained the advertisements for the auction, and reported that there were more than 42 bidders at the sale. His contract with the bank specified that the sales proceeds would be escrowed for 25 days to allow clearance of checks, at which time the money was paid to the bank. He offered his expert opinion that the sale was commercially reasonable. In this connection, the court made factual findings that reasonable notice of the foreclosure sale was given to Rent America and to Sinclair, and that the foreclosure was conducted in a commercially reasonable manner.

Against this background, Rent America and Sinclair utilize their seventh point to charge that the court erred in finding a deficiency on the foreclosure and repossession of the collateral. Because there is no such finding among the factual findings made and filed by the court, it must be assumed that their real complaints are the sub-listings that the property securing the notes was not disposed of in a commercially reasonable manner, it was disposed of at less than 70% of its value, and proper notice was not given before the sale. The only seventh-point argument made, and the complaint not waived, is that the disposition of the $30,000 to $40,000 inventory at cost for approximately $8,000 to $10,000 (actually $12,247.75) would not be commercially reasonable. The argument is not compelling.

 Since the bank's disposition of the collateral must have been commercially reasonable, *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769, 771 (Tex. 1982), the seventh point, as cast in relation to Rent America's and Sinclair's burden of proof, *Morgan v. Amarillo Nat. Bank*, 699 S.W.2d 930, 935 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.), is a "matter of law" point. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). The point can be sustained only if first there is no evidence of probative force tending to support the court's finding of the commercial reasonableness of the disposition and, second, if the contrary is established as a matter of law. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982).

The court, as the trier of fact, could reasonably believe that after proper notice, there was a well-advertised auction, attended by many bidders, at which property valued at $10,600 was sold for more than $12,000. Then there is some evidence of probative force that the disposition of the property was made in a commercially reasonable manner. As a result, the point must fail. *Id.* at 697. The seventh point of error is overruled.

 With the eighth point, Sinclair contends that the court erred in rendering judgment against him because the bank, without giving him notice, unilaterally altered the terms of the underlying transaction by charging usurious interest, failed to abate interest during bankruptcy, and failed to credit Rent America's balance at the time of the auction. Aside from the fact that Sinclair, as guarantor of the corporate debt, is not entitled to claim usury, *Universal Metals & Machinery, Inc. v.*

*Bohart,* 539 S.W.2d 874, 879 (Tex.1976), the resolutions of the first seven points dictate the resolution of this point adverse to Sinclair's contention. The eighth point of error is overruled.

Accordingly, the judgment is affirmed.